17152

JOHN S. WEBB, Appellant, v. GREENWOOD COUNTY, Respondent

(92 S. E. (2d) 688)

*Messrs. Pope & Greene,* of Newberry, and *Griffith, Cole-man & Griffith,* of Saluda, *for Appellant,*

*Messrs. Grier, McDonald, Todd & Burns,* and *G. P. Callison,* of Greenwood, *for Respondent,*

272

274

May 1, 1956.

G. BADGER BAKER, Acting Associate Justice.

Plaintiff-appellant is the owner of two tracts of land, bordering Saluda River in Saluda County. The two tracts are used for farming, growing timber and pasturage purposes. In 1940, the County of Greenwood constructed a hydroelectric plant, about five miles upstream, at a point commonly known as Buzzard's Roost, and as a necessary reservoir of water supply the County created Lake Greenwood.

In May of 1952, appellant brought this action against the respondent, County of Greenwood, alleging an unlawful use of Saluda River by (1), the discharge of unusual quantities of water at unexpected times and irregular intervals (2), the flooding of his lands (3), the creation of dangerous and

hazardous conditions for his cattle, and (4), the deposits, by the flood waters, of injurious silt and mud upon his fields, which has materially reduced the value of his property for agriculture and pasturage, thereby taking his property for public use without just compensation being first paid therefor.

Respondent, in its answers, admitted the construction of the hydroelectric plant, the creation of Lake Greenwood, but denied that appellant's lands have been damaged by reason of its operation of the project, and alleged three "immunity defenses": a license from the Federal Power Commission, navigability of Saluda River, and acts of God. The fifth defense in the answer "specifically pleads the Statute of Limitations as a bar to this action for any acts or damages occurring more than six (6) years prior to the commencement of this action." Prior to the trial of the case respondent, on motion, was permitted to amend its fifth defense so as to plead the Statute "as a bar to any acts or damages of any kind or nature," which, in effect, is identical in substance to its original plea; and, further, respondent was permitted to add a sixth defense of the Statute of Limitations, which is nothing more than a reassertion of the plea as originally alleged and amended. Very probably the amendment was urged as a measure of precaution rather than of necessity from any deficiency in pleading, and, of course, properly allowed.

. At the trial of the case appellant, and his witnesses, described the condition of his lands prior to the erection of the hydroelectric structure, the depreciated condition thereafter, and the elements of reduced value comprising just compensation, the relief demanded. There is present the requisite evidence of the release of the impounded waters at irregular intervals, the force thereof, the overflow of the banks of Saluda River, the flooding of appellant's lands and the deposit of damaging mud and silt. Discussion of the evidence in detail or effect is unecessary since the question or questions presented on appeal are legal and not factual.

When appellant rested his case, respondent moved for a nonsuit, upon several grounds, which motion was granted on the basis that appellant's cause of action is for a permanent taking, resulting from ordinary day by day operations of the project, and is barred by the Statute of Limitations since the taking was effective several years prior to 1946.

The trial Judge, Honorable T. B. Greneker, at the time of ordering the nonsuit, stated he would prepare and file a written order containing his reasons for his decision on the motion. A comprehensive order was thereafter issued, from which this appeal is taken, although in point of time the appeal relates back to time of trial.

Judge Greneker discusses the various problems or issues presented in the case and bases his conclusion upon the application of the Statute of Limitations on the following points:

(1) The hydroelectric installation, its structures, dam and reservoir, is permanent, open and apparent, authorized and directed by law, and not subject to abatement;

(2) Appellant's claim is for consequential damages constituting one cause of action for a permanent taking of his lands, without any element of improper or negligent operations, or abatable nuisance, but is the result of ordinary and normal functional performance of the project;

(3) South Carolina, in its construction of Article I, § 17, Constitution of 1895, does not recognize a distinction between "taking" and "damaging," but holds that a deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a "taking" as though the property were actually appropriated, citing *Wilson v. Greenville County*, 110 S. C. 321, 96 S. E. 301; *White v. Southern Ry. Co.*, 142 S. C. 284, 140 S. E. 560, 57 A. L. R. 634; *Henderson v. City of Greenwood*, 172 S. C. 16, 172 S. E. 689; *Gasque v. Town of Conway*, 194 S. C. 15, 8 S. E. (2d) 871;

(4) The Statute of Limitations is a statute of repose, affects the remedy, not the right, and its application is not in contravention of Article I, § 17, and therefore is operative against a consequential taking;

(5) Our broad interpretation of a "taking" affects the time when the Statute begins to run, "for the obvious reason that a 'taking' occurs when a legal remedy is available," and since the cause of action arises when the injury, damage or taking occurs, the Statute is operative from the time the permanency and extent thereof is, or should be, known to the landowner;

(6) The application of the Statute is not affected by the permanency of the taking, whether it is permanent or temporary;

(7) However, temporary successive takings are not presumed to continue, and each injury is a new cause of action, barred when its occurrence is more than six years prior to the institution of an action, citing *Conestee Mills v. City of Greenville,* 160 S. C. 10, 158 S. E. 113, 75 A. L. R. 519;

(8) Appellant, prior to 1946, became fully aware and comprehended the extent, of the taking, but did not bring his action until May of 1952, and was therefore barred by the Statute of Limitations.

The order of Judge Greneker, logical, well written, amply supported by authorities, and as already stated, comprehensive, will be reported. The various exceptions thereto have been condensed into two questions, with three sub-sections to Question 1, as follows:

"I. Is a Statute of Limitations a bar to recovery of the compensation guaranteed a private landowner by Article 1, Section 17, of the State Constitution of 1895 where private property is taken for public use?

"A. Can a landowner's constitutional right to compensation for property taken for public use be barred by adverse possession of less than the prescriptive twenty-year period?

"B. Does the six-year Statute of Limitations apply in an action for compensation for private property taken for public use?

"C. Does South Carolina make a distinction between a direct taking and a taking as a result of consequential damages?

"II. Does the navigability of the Saluda River constitute a defense to an action for damages sustained by a landowner above high water mark?"

Although the order of nonsuit is sufficient unto itself, it may not be amiss to briefly refer to one of the points presented in the Questions. Question I(A), raises the issue that appellant's action cannot be barred except by prescriptive use. This contention is supported by the text in 18 Am. Jur., Eminent Domain, Sec. 394, page 1042, but not pertinent to the situation or case under review:

"When a special remedy is provided by statute for the recovery of compensation for land taken by eminent domain, and no time limit for instituting such proceedings is fixed, according to the weight of authority the general statute of limitations for bringing a civil action is not applicable, and it is only after the expiration of the period necessary to acquire land by adverse possession that an owner who has allowed his land to be taken without applying for compensation is held to have lost his rights."

When an ordinary civil action is employed the controlling principle is different, as written in the same volume of Am. Jur., Sec. 395, page 1044;

"In jurisdictions which allow permanent damages to be assessed as of right in action at common law for the erection of a public work of a permanent character, without condemnation proceedings by a corporation clothed with the power of eminent domain, it is clear that after the expiration of the statutory period in ordinary civil actions the right to recover for the construction or maintenance of such a work is lost."

The exercise of the mode of condemnation, as permitted Greenwood County, is under and pursuant to the general

proceedings of law relating to condemnations in the exercise of the right of eminent domain, *Greenwood County v. Watkins,* 196 S. C. 51, 12 S. E. (2d) 545. This is not an action to compel Greenwood County to assess damages, as in the case of *Godwin v. Carrigan,* 227 S. C. 216, 87 S. E. (2d) 471, wherein it was held that the statute of limitations does not apply to a proceeding in mandamus. No special procedure is invoked by appellant, but he has brought his action at common law for compensation provided by the Constitution as a result of the permanent damages to his property which constitute a taking.

The test is not whether the claim is for a direct taking or consequential damages, for, as pointed out by Judge Greneker, "South Carolina has taken the broadest possible view of 'what is a taking' and has construed the least actual 'damage' to be a 'taking'." The test is whether the claim is asserted under a special proceeding, or special remedy, or is the claim under the Constitution, in an action at common law and governed by a general statute of limitations.

The last question relates to the refusal to strike respondent's third defense from its answer, which is as follows:

"That Saluda River is a navigable waterway of the State of South Carolina and the defendant's project erected thereon has been specifically authorized by the State of South Carolina, and that any rise and fall within high water mark of the stream therefrom results in no lawful injury to the plaintiff."

This exception or question has now become academic, by reason of the affirmance of the order of nonsuit. However, the rights of the individual and the sovereign power are fully discussed in *Cape Romain Land & Improvement Company v. Georgia-Carolina Canning Company,* 148 S. C. 428, 146 S. E. 434; *Rice Hope Plantation v. South Carolina Public Service Authority,* 216 S. C. 500, 59 S. E. (2d) 132; *Early v. South Carolina Public Service Authority,* S. C., 90 S. E. (2d) 472.

Appellant's exceptions are dismissed, the order of the trial Court affirmed and directed to be reported herewith and adopted as part of this opinion.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.