535 S.E.2d 918

**Emory S. MAIN, Respondent,**

v.

**William Bonner THOMASON and Barbara Thomason, Appellants.**

No. 25182.

Supreme Court of South Carolina.

Heard March 7, 2000.

Decided Aug. 14, 2000.

Rehearing Denied Sept. 7, 2000.

Capers G. Barr, III, of Barr, Unger & McIntosh, LLC, of Charleston, for appellants.

Dennis J. Rhoad, of Charleston, and Stephen A. Spitz, of Columbia, for respondent.

Attorney General Charles M. Condon, and Senior Assistant Attorney General Kenneth P. Woodington, of Columbia, for Amicus Curiae State of South Carolina.

TOAL, Acting Chief Justice:

Dr. William Bonner Thomason and Barbara Thomason ("Thomasons") appeal the decision of the trial court and ask this Court to declare S.C.Code Ann. § 15–67–270 (Supp.1999) unconstitutional because it permits the taking of private property for private use and is unconstitutionally vague. We affirm the trial court.

## FACTUAL/PROCEDURAL HISTORY

The Thomasons and Emory S. Main ("Main") are adjoining homeowners on South Battery Street in Charleston, South Carolina. The eastern side wall of Main's historic home lies on the "zero lot line," or the line dividing his property from the Thomasons' property to the east. In 1996, Main discovered that the frame of his historic home was rotten and in dire need of repair because it was on the verge of collapsing. To make the necessary repairs, Main needed access to the Thomasons' property because the eastern side of his house cannot be painted, repaired, improved, or maintained without access to the Thomasons' driveway and patio.

In downtown Charleston a considerable number of properties and historic homes are located on zero lot lines. The close proximity of these structures creates unique public safety concerns and increases the need to keep these structures in good repair. Acting to assure access for repair and renovation and to resolve any potential conflict between adjoining landowners, the South Carolina General Assembly passed S.C.Code Ann. § 15–67–270 (Supp.1999), which allows a neighbor temporary access to an adjoining landowner's property in order to make necessary repairs. The statute requires the neighbor who receives a temporary license to compensate the adjoining landowner in an amount to be determined by a lower court. The temporary license can only be granted when specific terms and conditions are satisfied, and only when numerous preconditions exist. After this law was enacted in 1998, Main wrote two letters to the Thomasons requesting access to their property. In a letter dated July 14, 1998, Mr. Thomason agreed to let Main access his property during the period from October 5, 1998 until October 30, 1998, but these conditions were never accepted by Main.

On July 6, 1998, Main filed a Summons and Complaint to petition for a court-ordered license pursuant to section 15–67–270. The Thomasons filed a Motion to Dismiss on the grounds that: (1) section 15–67–270 was an unconstitutional taking of private property for private purposes; (2) the action was barred by res judicata; (3) the action was not properly commenced by the service of a summons; and (4) the petition failed to state a claim under section 15–67–270. On August

28, 1998, the trial judge denied the motion and found section 15–67–270 was constitutional because there was no taking of private property.

On September 11, 1998, this case was tried by consent on its merits with the right of direct appeal to this Court. The Master–In–Equity granted a temporary license to Main that allowed him access to the Thomasons' driveway and patio to perform necessary and reasonable repairs. Main was granted access to the property for thirty-seven and one-half working days to make his repairs in exchange for the payment of $1,500 to the Thomasons. Main used the Thomasons' property beyond the thirty-seven and one-half working days originally granted. Main remained on the Thomasons' property from September 14, 1998 until January 29, 1999, a period of 138 days. The Master–In–Equity ordered Main to pay $4,000 for holding over on the Thomasons' property beyond the permitted thirty-seven and one-half days.

On April 13, 1999, the Thomasons appealed the trial court's decision. The issues before this Court are as follows:

I. Does section 15–67–270 permit the unconstitutional taking of private property for private use without the consent of the owner in violation of the Fifth Amendment to the United States Constitution and in violation of art. I, § 13 of the South Carolina Constitution?

II. Is section 15–67–270 unconstitutionally vague because it does not define what are "unreasonable conditions upon entry" imposed by a neighbor who consents to the entry of an adjoining landowner on his property?

### LAW/ANALYSIS

**I. Taking of Private Property**

A. United States Constitution

The Thomasons argue that section 15–67–270 is unconstitutional because it authorizes a taking of private property in violation of the Fifth Amendment to the United States Constitution. We disagree.

Statutes are to be construed in favor of constitutionality, and this Court will presume a legislative act is constitu-

tionally valid unless a clear showing to the contrary is made. *State v. Brown,* 317 S.C. 55, 451 S.E.2d 888 (1994). A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution. *See Westvaco Corp. v. South Carolina Dep't of Revenue,* 321 S.C. 59, 467 S.E.2d 739 (1995).

Section 15–67–270 allows a court of equity to issue a temporary license to an adjoining landowner for the purpose of improving his property only when it is otherwise impossible to accomplish the improvements and only after just compensation has been paid to the adjoining landowner. The statute is highly specific and only allows a license to be issued once particular requirements have been met. First, the statute requires that a petition be filed only after a good faith effort to obtain permission to enter the adjoining property has been made and the petitioner presents evidence of an actual request and denial of entry, or the imposition of unreasonable conditions upon entry. *See* S.C.Code Ann. § 15–67–270(B). Second, the statute requires the trial court to conduct an evidentiary hearing where a temporary license can be issued upon a finding:

(1) the entry upon the adjoining property does not irreparably or unreasonably damage the adjoining property;

(2) the grant of license is not an unreasonable encroachment or burden upon the adjoining property; and

(3) the license is reasonably necessary for the improvement or preservation of the petitioner's property.

S.C.Code Ann. § 15–67–270(D)(1)–(3). Further, section 15–67–270 requires the temporary license to specify the nature of the improvements, the dates of the operation of the license, the amount of compensation, that a copy of the court order will be provided to any person making improvements, and any other terms or conditions the trial court considers important. S.C.Code Ann. § 15–67–270(E)(1)–(6).

The government is empowered by the state and federal constitutions with the authority to legislate for the protection of the public health, welfare, and morals. *State v. Langley,* 236 S.C. 583, 115 S.E.2d 308 (1960). Courts will not interfere with the enforcement of regulations designed for the

protection of health, welfare, and safety of citizens unless they are determined to be unreasonable. *Richards v. City of Columbia*, 227 S.C. 538, 88 S.E.2d 683 (1955). The exercise of police power is subject to judicial correction only if the action is arbitrary and has no reasonable relation to a lawful purpose. *Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 397 S.E.2d 662 (1990).

"The individual's privilege to use property freely is always subject to a legitimate exercise of the police power under which new burdens and restrictions may be imposed when the public welfare demands." *Peoples Program for Endangered Species v. Sexton*, 323 S.C. 526, 529, 476 S.E.2d 477, 479 (1996). The State has a legitimate interest in preserving property and can properly exercise its police powers to do so. Section 15–67–270 ensures property does not fall into such disrepair as to threaten the health and safety of the public. We find that section 15–67–270 has a reasonable relation to the lawful purpose of property preservation and is a valid exercise of the Legislature's police power.[1]

Although we find section 15–67–270 is a valid exercise of the State's police powers, we will address whether it authorizes an unconstitutional taking under both the federal and state tests. The Fifth Amendment to the United States Constitution provides that "private property shall not be taken for a public use without just compensation." U.S. Const. amend. 5. There are two main categories of takings: (1) where state law authorizes a permanent physical occupation of property; and (2) where state law so regulates property that it has lost all economic value. *See generally Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (holding a taking occurs where the owner of real property has been called upon to sacrifice all economically beneficial use of property in the name of the common

---

1. The State's action in this case is also consistent with South Carolina's broad view of police powers. *See generally Richards v. City of Columbia*, 227 S.C. 538, 88 S.E.2d 683 (1955) (holding ordinance which provided for the alteration, repair, or destruction of unfit houses was a valid exercise of the State's police powers because "the legislative authority may ... impose and enforce regulations governing buildings upon private owned property without violating the constitutional property rights of the owner.").

good); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (holding a permanent physical occupation authorized by the government is a taking without regard to the public interest it may serve). In this case, the temporary license did not authorize a permanent physical occupation because the license only allowed Main to enter the Thomasons' property for a temporary period, after fully compensating them for the intrusion. Further, the Thomasons did not lose all economic value in their property because they were still able to sell, rent, lease, and use their home despite the temporary license.

 Both federal and state jurisprudence have developed tests to determine whether a taking of private property has occurred. According to the United States Supreme Court, a balancing test must be used to determine whether a law or regulation causes a taking of private property. Three factors are typically balanced to determine whether the public benefit from the regulation outweighs the private harm to the landowner: (1) the character of the government action; (2) the economic impact of the regulation on the claimant; and (3) the degree to which the regulation has interfered with distinct investment backed expectations. *Penn Central v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Under South Carolina's jurisprudence, a two prong test is used to determine when a taking has occurred. According to *Long Cove Club Assocs. v. Town of Hilton Head*, 319 S.C. 30, 458 S.E.2d 757 (1995), a land use regulation does not constitute a taking if: (1) the law in question substantially advances a legitimate state interest; and (2) the law in question does not deny an owner all economically viable use of his land. *Id.*

 Section 15–67–270 does not constitute a Fifth Amendment taking under either the *Penn Central* or the *Long Cove* standards. The character of the state action in question is an exercise of the police power in order to preserve property and prevent waste, not to acquire the Thomasons' driveway permanently for its own use. Section 15–67–270 advances the State's legitimate interest in preserving property, avoiding waste of valuable property, and promoting safe living environ-

ments.[2] The degree of economic impact on the Thomasons was nominal because they were paid $5,500 to compensate for the intrusion, and they have not claimed this amount is inadequate. Finally, there is no interference with investment backed expectations because the Thomasons retained the entire "bundle of rights" typically associated with property ownership during the duration of the temporary license, including the right of possession, right to sell, lease, devise, and rent their property.

In *Chase Manhattan Bank v. Broadway, Whitney Co.*, 57 Misc.2d 1091, 294 N.Y.S.2d 416 (1968) *aff'd*, 24 N.Y.2d 927, 301 N.Y.S.2d 989, 249 N.E.2d 767 (1969), a similar licensing statute was held constitutional by the New York Supreme Court, Special Term and later affirmed by New York's highest court. The facts of the New York case are similar to this case. In *Chase*, the petitioner petitioned for a license to enter the respondent's premises for five days during a one month period in order to make necessary repairs to the rear wall of his premises. *Id.* at 417.

The New York Supreme Court found the licensing statute was constitutional and a valid codification of well-settled principles of New York jurisprudence. While New York's property laws are more liberal than South Carolina's, our licensing statute is more protective and more specific than New York's.[3]

---

2. The State's action in the instant case is consistent with zoning cases where a state's exercise of its police powers was upheld. *See, e.g., Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (upholding a zoning ordinance which required open spaces because it advanced a legitimate state interest and left the owner with an economically viable use); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (holding a municipal ordinance that restricted commercial development was a valid exercise of police power where the law bore a substantial relationship to the public welfare and no irreparable injury was inflicted on the landowner).

3. New York's statute states:

When an owner or lessee seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner or lessee without entering the premises of an adjoining owner or his lessee, and permission so to enter has been refused, the owner or lessee seeking to make such improvements or repairs may commence a special proceeding for a license so to enter pursuant to article four of the civil practice laws and rules. The petition and affidavits, if any, shall state the facts making such entry

For example, South Carolina requires the trial court to hold an evidentiary hearing to determine if the license is reasonably necessary and whether the license would cause irreparable harm to the adjoining landowner. The General Assembly also mandated that each license contain compensation as a necessary term. Finally, section 15–67–270(E) requires the license to specify the nature of improvements, the manner the improvements will be made, the dates of the license's operation, and "any other terms and conditions the court considers appropriate to minimize disruption to the adjoining owner's or lessee's use and enjoyment of the property over which the license is granted." S.C.Code Ann. § 15–67–270(E)(1)–(6).

## B. State Constitution

■ The Thomasons argue section 15–67–270 is unconstitutional because it authorizes a taking of private property in violation of art. I, § 3 of the South Carolina Constitution. We find the Thomasons' claim under the South Carolina Constitution art. I, § 3 fails because section 15–67–270 is a valid exercise of the State's police power and does not constitute a taking.

■ The South Carolina Constitution is more protective of due process rights than the United States Constitution because it specifically prohibits private property from being taken for *solely* private use, without the express consent of the owner. S.C. Const. art. I, § 23. Section 15–67–270 does not allow the State to take the Thomasons' driveway and turn it over to Main for his indefinite private use. This case concerns a temporary license. Moreover, section 15–67–270 concerns the exercise of the State's police power in order to preserve property for the public benefit. The cases relied upon by the Thomasons, *Karesh v. City Council of Charleston,* 271 S.C. 339, 247 S.E.2d 342 (1978), *Clemson Univ. v. First Provident Corp.,* 260 S.C. 640, 197 S.E.2d 914 (1973), and *Young v. Wiggins,* 240 S.C. 426, 126 S.E.2d 360 (1962), are distinguish-

necessary and the date or dates on which the entry is sought. Such license shall be granted by the court in an appropriate case upon such terms as justice. requires. The licensee shall be liable to the adjoining owner or his lessee for actual damages occurring as a result of the entry.
N.Y.Law § 881, art. 8 (McKinney 1968).

able from the instant case because they concern the State's eminent domain power, not the State's police power. *See Karesh, supra* (holding city could not use its eminent domain power to condemn land and then lease it to a private corporation to construct a parking facility); *First Provident, supra* (holding statute that allowed a permanent drainage ditch to be constructed over a neighbor's property was unconstitutional); *Wiggins, supra* (holding the use of the eminent domain power to create a private lake for private purposes was unconstitutional under the South Carolina Constitution).

Furthermore, the other cases relied upon by Thomason, including *Kline v. City of Columbia,* 249 S.C. 532, 155 S.E.2d 597 (1967), *Lindsey v. City of Greenville,* 247 S.C. 232, 146 S.E.2d 863 (1966), and *Webb v. Greenwood County,* 229 S.C. 267, 92 S.E.2d 688 (1956), are distinguishable because they involve situations where government action occurring in the course of government operation results in injury to private property. *See Kline, supra* (holding a taking occurred where plaintiff's property was damaged as a result of a pulled gas line while the City was widening the street); *Lindsey, supra* (finding a taking where a government flood of private property was caused by release of water from a government operated dam); *Webb, supra* (finding a taking where damage to property was caused by government operation of a hydroelectric plant). These cases are distinguishable because no injury is caused to the Thomasons' property due to state action, the alleged damage comes from Main's ability to access their driveway and patio.[4]

---

4. *Kline, Lindsey,* and *Webb* are products of the era of total sovereign immunity. In the jurisprudence of this state prior to *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985) (doctrine of strict sovereign immunity overruled) and the subsequent adoption of the South Carolina Governmental Tort Claims Act, the takings clause of the South Carolina Constitution, art. I, § 23 was used as a means of granting takings relief for what were really tort claims against governmental entities in South Carolina and circumventing the absolute bar of sovereign immunity. *See* J.H. Toal, Property Survey, *Kline v. City of Columbia,* 19 S.C.L.Rev. 635, 637 (Spring 1967); C.E. McDonald, Jr., Comment, *Municipal Corporations and Eminent Domain—Right of Individual to Recover for Damage to Private Property Occasioned by Alleged Negligence of Municipal Corporation in Widening Street,* 19 S.C.L.Rev. 883 (Summer 1967).

 The Thomasons also argue that the interest given to Main was an easement, not a temporary license. Based on the plain meaning of the statute, we find the statute creates a temporary license, not an easement. An easement gives no title to land on which servitude is imposed, but it is a property or an interest in land. *Morris v. Townsend,* 253 S.C. 628, 172 S.E.2d 819 (1970). In this case, Main did not receive an ownership interest in the driveway, he only received permission to enter the Thomasons' driveway for a specific period of time.[5]

## II. Unconstitutionally Vague

 The Thomasons argue that section 15–67–270 is unconstitutionally vague and violates the Due Process Clause of the United States and South Carolina constitutions because the statute does not provide an objective basis for the trial court to determine what is an "unreasonable condition upon entry." We disagree.

 The constitutional standard for vagueness is the practical criterion of fair notice to those to whom the law applies. *Toussaint v. State Bd. of Med. Exam'rs,* 303 S.C. 316, 400 S.E.2d 488 (1991) (citations omitted). A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application. *Id.* at 320, 400 S.E.2d at 491. *See, e.g., Taylor v. Nix,* 307 S.C. 551, 416 S.E.2d 619 (1992) (holding "arbitrary" was not unconstitutionally vague because the term was readily definable). However, due process does not require that every

---

**5.** The Thomasons base their argument on the definition of license in *Briarcliffe Acres v. Briarcliffe Realty Co.,* 262 S.C. 599, 206 S.E.2d 886 (1974). In *Briarcliffe,* a license is defined as "a personal, revocable, and unassignable privilege, conferred either by writing or parole, to do one or more acts on land without possessing any interest therein...." *Id.* at 615, 206 S.E.2d at 894–895 (citing 25 Am.Jur.2d *Easements and Licenses* § 123 (1966)). "A license which is not revocable would, of course, amount to an easement." *Id.* We do not find this argument persuasive because Main possesses no interest in the Thomasons' property and while the Thomasons cannot revoke the license, the license terminates at a specific date.

word in a statute be expressly defined. In fact, many federal and state statutes leave key terms undefined.[6]

Pursuant to section 15–67–270, a neighbor can petition the circuit court for a license to enter the adjoining property of a neighbor for the purposes of performing improvements, repairs, or maintenance to his property if "the petitioner can present evidence of an actual request and denial of entry, or the imposition of *unreasonable conditions upon entry.*" S.C.Code Ann. § 15–67–270(B)(1) (emphasis added). The petition serves as both a foundation for the trial judge to determine the reasonableness of the request, and also as notice to the landowner whose property will be accessed. While section 15–67–270 does not specifically define "unreasonable conditions upon entry," the term "unreasonable" is commonly used in statutes and is readily definable by people of common intelligence. *See Blacks Law Dictionary* 1537 (7th ed. 1999) ("unreasonable" generally defined as "not guided by reason; irrational or capricious").

Section 15–67–270 requires a trial court to conduct an evidentiary hearing before a temporary license can be granted. S.C.Code Ann. § 15–67–270(D). Because of the varied circumstances that may arise under the statute, an evidentiary hearing is necessary for the trial court to determine what is just, equitable, and reasonable under the circumstances. The hearing allows the trial court to determine what is equitable based upon an evaluation of the evidence, including an evaluation of the reasonableness of the neighbor's conditions upon entry.

The General Assembly did not define or provide examples of "unreasonable conditions upon entry" so that the trial courts will determine reasonableness on a case-by-case basis. While the trial court determines reasonableness on a case-by-case basis, it is guided by the general framework prescribed by

---

**6.** *See, e.g.,* Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 (1994) (defining "operator" as one who merely "owns or operates a facility"); South Carolina Residential Landlord Tenant Act, S.C.Code Ann. § 27–40–440 (1976) (leaving the terms "reasonably necessary" and "fit and habitable" undefined).

section 15–67–270. The statute provides specific examples of what are considered important criteria of entry. For example, if a license is granted by the trial court, the license must provide the nature and manner of the improvements, the dates upon which the license begins and ends, and the amount of compensation that will be paid to the property owner over whose property the license is granted. S.C.Code Ann. § 15–67–270(E)(1)–(4). Therefore, any unnecessary restrictions by an adjoining landowner on the manner and nature of the improvements, the time allowed for the improvements, or the amount of compensation could be viewed by the trial court as an unreasonable condition upon entry. Section 15–67–270, therefore, does not leave "unreasonable conditions upon entry" completely undefined because the statutory framework provides a general context from which reasonableness can be determined.

Based on Main's petition, the trial judge found the Thomasons either "denied [Main's] request by failing to respond in a timely manner or [imposed] unreasonable conditions upon entry (i.e. inadequate time to perform the necessary repairs and maintenance)." We find the time allowed to perform the necessary improvements is an important criteria upon entry, and the trial court was correct in finding that inadequate time equates to an unreasonable condition upon entry.

### CONCLUSION

Based on the foregoing, we **AFFIRM** the decision of the trial court and uphold section 15–67–270 as constitutional.

MOORE, WALLER and BURNETT, JJ., concur.

FINNEY, C.J., not participating.