596 S.E.2d 917

**DENENE, INC., d/b/a Trio Club, L.C. Entertainments, LLC, d/b/a Club Tango, and Let's Eat, Inc., d/b/a Port Side Cafe Uptown, Appellants,**

v.

**CITY OF CHARLESTON, Respondent.**

No. 25829.

Supreme Court of South Carolina.

Heard April 7, 2004.

Decided May 24, 2004.

John F. Martin, of Charleston, for Appellants.

William B. Regan and Francis I. Cantwell, both of Regan & Cantwell, of Charleston, for Respondent.

Justice WALLER:

Appellants filed a declaratory judgment action seeking to invalidate an ordinance requiring that all commercial establishments within the city of Charleston, which serve alcohol for on-site consumption, close at 2 a.m. Both appellants and the City of Charleston (City) moved for summary judgment. The trial court denied appellants' motion for summary judgment and granted City's motion. We affirm.

## FACTS

On July 18, 2000, City enacted an ordinance requiring that: Commercial establishments which allow for the on-premises consumption of beer, ale, porter and/or wine shall be prohibited from operating between the hours 2 a.m. and 6 a.m. on Mondays through Saturdays.

Prior to voting on the ordinance, the Charleston City Council (Council) offered public debate on the issue. A number of citizens complained about noise, vandalism, crime, litter, lewd acts, public urination, and general quality of life, and believed closing the bars at 2 a.m. would diminish those problems. A number of other citizens spoke against the ordinance.

After the ordinance was ratified, appellants, who own several bars in Charleston, filed a declaratory judgment action challenging the ordinance. The complaint alleged that: the ordinance was preempted [1] by state law; the ordinance violated appellants' equal protection rights; the ordinance violated appellants' right to due process; and, the ordinance was a

---

1. The trial court originally granted summary judgment in favor of appellants on the preemption issue and this Court reversed. *Denene, Inc. v. City of Charleston,* 352 S.C. 208, 574 S.E.2d 196 (2002). This appeal concerns the remaining issues.

taking in violation of Article I, § 13, of the South Carolina Constitution.

## ISSUES

1. Did the trial court err in finding that the ordinance does not violate appellants' equal protection rights?

2. Did the trial court err in finding that the ordinance does not violate appellants' due process rights?

3. Did the trial court err in finding that the ordinance is not a regulatory taking without compensation?

## 1. EQUAL PROTECTION

Appellants argue the trial court erred in finding that the ordinance is subject to review under the rational basis standard. Appellants also claim the ordinance is invalid because it is selectively enforced. We disagree.

### a. Proper Standard of Review

 Courts generally analyze equal protection challenges under one of three standards: (1) rational basis; (2) intermediate scrutiny; or, (3) strict scrutiny. 16B Am.Jur.2d Constitutional Law § 812 (1998). If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Id.* (internal citations omitted).

 Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be affected; (2) the members of the class are treated alike under similar circumstances and conditions; and, (3) the classification rests on some reasonable basis. *Fraternal Order of Police v. South Carolina Dep't of Rev.*, 352 S.C. 420, 430, 574 S.E.2d 717, 722 (2002); *Gary Concrete Products, Inc. v. Riley*, 285 S.C. 498, 504, 331 S.E.2d 335, 339 (1985).

The record clearly indicates the ordinance was passed to alleviate problems caused by intoxicated people in Charleston during the proscribed hours. Mayor Riley testified that the growth of bars and restaurants serving alcohol after 2 a.m. in Charleston created an intolerable burden on the citizens of the city. Riley stated that Council passed the ordinance because of noise and other problems late at night, and that Council felt it was appropriate to require commercial establishments that serve alcohol to close at a more reasonable hour. Further, Mayor Riley noted that residential areas are in close proximity to bars and nightclubs in Charleston, and that Council was simply trying to establish a "reasonable zone of peace and quiet in our town and for our citizens."

Henry Fishburne, president of the Charles Towne Neighborhood Association and a Council member, testified that Council had numerous complaints about late night activities, which led Council to consider the ordinance. Fishburne also went on a "ride along" with Charleston police, and testified he saw large numbers of people partying, littering, and urinating in the streets and outside of bars late at night.

Lieutenant Charles Hawkins, of the Charleston City Police Department, testified that he observed drinking, noise, public urination, and vandalism in the late night hours in Charleston. Hawkins also testified that the problems related to late night drinking prevented officers from responding to more serious crimes in the area.

Citing *City of Myrtle Beach v. Juel P. Corp. & Gay Dolphin, Inc.*, 344 S.C. 43, 543 S.E.2d 538 (2001), appellants argue that the ordinance should be strictly construed because it is in derogation of their "common law right to use private property so as to realize its highest utility." However, appellants stretch the language they cite in *Gay Dolphin*, which involved a Myrtle Beach ordinance prohibiting abandoned and obsolete signs. While the Court in *Gay Dolphin* did hold that ordinances in derogation of the natural rights of a person over their property are to be strictly construed, the case did not involve equal protection and did not involve the health, safety, or welfare of the general population.

A municipality has the power to enact regulations for the purpose of preserving the health, safety, welfare, and

comfort of dwellers in urban centers, particularly in regard to alcohol. *City of Charleston v. Esau Jenkins*, 243 S.C. 205, 209, 133 S.E.2d 242, 244 (1963). As this Court stated in *Main v. Thomason:*

> [t]he government is empowered by the state and federal constitutions with the authority to legislate for the protection of the public health, welfare, and morals. Courts will not interfere with the enforcement of regulations designed for the protection of health, welfare, and safety of citizens unless they are determined to be unreasonable. The exercise of police power is subject to judicial correction only if the action is arbitrary and has no reasonable relation to a lawful purpose.

342 S.C. 79, 86–7, 535 S.E.2d 918, 922–23 (2000) (internal citations omitted); *see also Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338–39 (11th Cir.2002) (ordinance that barred persons under the age of twenty-one from entering or working at any establishment selling alcohol, but not food, for on-premises consumption, was subject to rational basis review rather than strict scrutiny in an equal protection challenge); *Other Place of Miami, Inc. v. City of Hialeah Gardens*, 353 So.2d 861, 863 (Fla.3rd App. Dist.1977) (ordinances curtailing the closing hours for the sale of alcoholic beverages from 3:00 a.m. to 1:00 a.m. were a valid exercise of the city's police powers).

We find the ordinance is rationally based and reasonably related to furthering a legitimate government purpose. Council, after allowing debate and public input, determined that the operation of bars between 2 a.m. and 6 a.m. had detrimental effects on the quality of life of residents and upon the city in general. Council legitimately sought to address those problems by enacting the ordinance. Based on the undisputed disruptions and other problems residents encountered from patrons of bars between the hours of 2 a.m. and 6 a.m., as well as law enforcement difficulties in controlling the problems through enforcement of existing ordinances, we find that Council's actions were rationally based. Accordingly, we hold, the ordinance is a valid exercise of City's police powers and does not affect a fundamental right.

Additionally, appellants, as the owners of bars in Charleston, are clearly not members of a suspect class, which has

been defined by the U.S. Supreme Court as a class "saddled with such disabilities, or subjected to such history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

Accordingly, we hold the trial court correctly applied the rational basis test.[2]

### b. Selective Enforcement

■ Appellants also contend they have received disparate treatment because other commercial establishments that have on-premises permits, such as hotels and hospitals,[3] are not being forced to cease all business operations during the proscribed hours. We disagree.

The trial court found appellants' argument that the City was not equally enforcing the ordinance because it was not forcing hotels or hospitals to physically close their doors was without merit. The trial court ruled that interpreting the ordinance to require hotels to cease operating from 2 a.m. to 6 a.m. would require a strained reading of the ordinance. The trial court ruled it was clear the ordinance was directed to establishments where on-premises consumption of alcohol occurs, and in the context of hotels or hospitals, "that means the public drinking areas, i.e. the bars and restaurants." The trial court further found that the ordinance could not apply to the confines of privately rented rooms in hotels or hospitals simply because those rooms exist in a commercial setting, and that a room within a hotel or hospital is akin to a home, apartment, or dormitory.

The trial court also found that all the evidence in the record demonstrated the ordinance was being enforced in other establishments where on-premises consumption of alcohol is allowed because the bars and other public drinking areas of

---

**2.** Appellants do not contend the trial court misapplied the rational basis test, only that the trial court should have applied the strict scrutiny test.

**3.** The Medical University of South Carolina (MUSC) has an on-premises beer and wine permit from the Department of Revenue, which it uses for receptions for faculty members.

those establishments are required to close at 2 a.m. Additionally, the trial court found there was adequate testimony in the record from law enforcement that, if hotel room service includes the sale of alcohol during the proscribed hours, hotels will be cited for violating the ordinance.

Appellants argue before this Court that they, as bar owners, are denied equal protection in violation of the United States and South Carolina Constitutions because the ordinance is being selectively enforced. Appellants contend that, although the ordinance applies to all commercial establishments that sell alcohol to be consumed on the premises, there is evidence in the record that other commercial establishments with on-premises permits, such as hotels and hospitals, are not required to cease operating from 2 a.m. to 6 a.m.

Randall McBreyer, head of vice for the city of Charleston Police Department, did testify in deposition that he was told to limit enforcement of the ordinance to food and beverage operations. However, while McBreyer testified that he would not require a hotel such as Charleston Place to entirely close its doors, he testified that he would cite the hotel and shut down any portion of the hotel that served alcohol if it operated during the proscribed hours.

Paul Stacey, manager of the Charleston Place Hotel, testified at deposition that the hotel did not sell any alcoholic beverages in the hotel or by room service between 2 a.m. and 6 a.m.

City also submitted an affidavit from Joseph C. Good, Jr., general counsel for MUSC. Good averred that, while MUSC had a bar and held a beer and wine permit for receptions, MUSC did not operate events with alcohol between the hours of 2 a.m. and 6 a.m.

We hold that it is unreasonable to interpret the ordinance so as to require hotels and hospitals to cease operating entirely during the proscribed hours simply because they happen to allow on-premises consumption of alcohol. The sale of alcohol within hotels or hospitals is only ancillary to their operation as commercial establishments. All the evidence in the record indicates that hotels and hospitals do not serve alcohol during the proscribed hours, that hotels close down the portions of their businesses that do serve alcohol, and that City is enforcing the ordinance against hotels and hospitals.

Further, even assuming City is not enforcing the ordinance equally, the fact that there is some unequal treatment does not necessarily rise to the level of a constitutional equal protection violation. In *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446, (1962), the U.S. Supreme Court held that, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," provided the selection is not "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *See also Waters v. Gaston County, North Carolina*, 57 F.3d 422, 427 (4th Cir.1995); *Butler v. Cooper*, 554 F.2d 645, 646 (4th Cir.1977) (before a claim of unlawful discrimination in the enforcement of criminal laws can be established, the plaintiff must allege and prove deliberate selective process of enforcement based upon race or other arbitrary classification).

We hold that even if there is evidence in the record of unequal enforcement, any such evidence only rises to the level of "the exercise of some selectivity in enforcement" of the ordinance. *Oyler v. Boles*, 368 U.S. at 456, 82 S.Ct. 501. Further, as noted previously, appellants are not members of a protected class. Accordingly, we hold the trial court correctly found no equal protection violation.

## 2. DUE PROCESS

Appellants contend the ordinance violates due process because it deprives them of a protected property right to conduct business. We disagree.

No person shall be deprived of property without due process of law. U.S. Const. amend XIV, § 1; S.C. Const. art. I, § 3. In order to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law. *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 430, 593 S.E.2d 462, 470 (2004). The standard for reviewing all substantive due process challenges to state statutes or municipal ordinances, including economic and social welfare legislation, is whether the ordinance bears a reasonable relationship to any legitimate interest of government. *Id.* at 430, 593 S.E.2d at 470.

Appellants cite *Painter v. Town of Forest Acres*, 231 S.C. 56, 97 S.E.2d 71 (1957) in support of their argument that the ordinance violates their due process rights. In *Painter*, Forest Acres passed an ordinance that prohibited any business located within the town from operating between the hours of midnight and 6 a.m. *Id.* at 58, 97 S.E.2d at 71. The ordinance stated that the noise of automobile traffic, lights, and other problems that arose in the usual course of carrying on a business where the public is being served constituted a nuisance. *Id.* at 58, 97 S.E.2d at 72. The business owner who challenged the suit was the owner of a drive-in restaurant. She claimed the ordinance would cost her fifty percent of her business. *Id.* at 59, 97 S.E.2d at 72.

This Court held that a municipal corporation could not "make a business a nuisance merely by declaring it as such." The Court found that the ordinance would seriously impair, if not destroy, many lawful businesses. Further, the Court noted the ordinance seemed to be directly aimed at destroying Painter's business. Accordingly, the Court held the ordinance was so unreasonable as to be unlawful on its face. *Id.* at 61, 97 S.E.2d at 73.

Despite appellants' arguments to the contrary, *Painter* does not stand for the proposition that City may never restrict the operating hours of a business within its jurisdiction. No one has an unfettered right to pursue a business detrimental to the public health, safety, and welfare. *See Greenville County v. Kenwood Enterprises, Inc.*, 353 S.C. 157, 170–71, 577 S.E.2d 428, 435 (2003) (county ordinance requiring a 1,500–foot setback for sexually oriented businesses based on the rationale of combating secondary effects of those businesses was constitutional); *Curtis v. State*, 345 S.C. 557, 573, 549 S.E.2d 591, 599 (2001) (statute making it unlawful to defraud a drug test furthers the public purpose of ensuring a drug-free workplace, which is a legitimate exercise of the State's police powers in regulating public safety and welfare, and outweighs any legitimate interest of the business); *Conway v. City of Greenville*, 254 S.C. 96, 101, 173 S.E.2d 648, 650 (1970) (while not unlimited, a municipality does have the authority in the exercise of the police power to enact zoning ordinances restricting the use of privately owned property).

As this Court held in *City of Charleston v. Esau Jenkins*, a municipal corporation has the power to "regulate any trade, occupation or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety or comfort; and in the exercise of the power particular occupations may be ... required to be conducted within designated limits...." 243 S.C. at 210–11, 133 S.E.2d at 244. We agree with the trial court's ruling that the ordinance is a limited measure designed to curb the deleterious effects of the appellants' operation of their establishments during the early morning hours. The ordinance is designed to maintain peace, quietude, safety, order, and quality of life in Charleston, while still allowing appellants to operate their businesses twenty hours a day.

We hold the trial court correctly found that the ordinance bears a reasonable relationship to City's legitimate interest in preserving the health, morals, safety, and comfort of Charleston.

### 3. TAKING

Appellants claim the ordinance amounts to a partial regulatory taking without compensation. We disagree.

Private property shall not be taken for a public use without just compensation. U.S. Const. amend. V; S.C. Const. art. I, § 13. There are two main categories of takings: (1) where state law authorizes a permanent physical occupation of property; and, (2) where state law so regulates property that it has lost all economic value. *Sea Cabins on Ocean IV Homeowners Ass'n., Inc. v. City of North Myrtle Beach*, 345 S.C. 418, 430, 548 S.E.2d 595, 601 (2001); *Main v. Thomason, id.* at 87, 535 S.E.2d at 933 (2000).

Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citing *Penn Central Transp. Co. v. City of York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). In determining whether the public benefit from a regulation outweighs the private harm, the Court will consider: (1) the economic impact of the regulation; (2) its interference with

reasonable investment-backed expectations; and, (3) the character of the governmental action. *Penn Central,* 438 U.S. at 124–25, 98 S.Ct. 2646; *Rick's Amusement, Inc. v. State,* 351 S.C. 352, 357, 570 S.E.2d 155, 157 (2001); *Westside Quik Shop, Inc. v. Stewart,* 341 S.C. 297, 305, 534 S.E.2d 270, 274 (2000).

The trial court found that the ordinance had a negative economic impact on appellants and interfered with their investment-backed opportunities. However, the trial court found that appellants' right to do business is, and always has been subject to the State's police powers, and that the ordinance was a reasonable exercise of those police powers. Accordingly, the trial court ruled that the ordinance did not constitute a compensable taking under the United States or the South Carolina Constitutions.

We agree with the trial court's ruling. While appellants suffered losses as a result of the ordinance, they are still free to operate twenty hours a day, except Sundays, if they so choose. The ordinance appears to be designed for the legislative purpose of maintaining peace, quietude, safety, order, and quality of life in Charleston. Quantifying peace, quietude, safety, order, and quality of life in a community is a normative decision best left to a legislative body. As noted by City, the operation of a bar has always been subject to the state's police powers. *See* S.C.Code Ann. § 61–2–80 (the State is the sole and exclusive authority empowered to regulate the operation of all locations authorized to sell beer, wine, or alcoholic liquors, except as it relates to hours of operation more restrictive than those set forth in this title); § 61–4–120 (it is unlawful for a person to sell or offer for sale wine or beer in this State between the hours of twelve o'clock Saturday night and sunrise Monday morning).

We hold the ordinance is a legitimate exercise of City's police power and does not amount to a compensable taking.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of City.

**AFFIRMED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice JOHN W. KITTREDGE, concur.