675 S.E.2d 776

**Jeffrey HARBIT, Thomas L. Harbit, Plaintiffs,
of whom Jeffrey Harbit is Appellant,**

**v.**

**CITY OF CHARLESTON, City of Charleston
Planning Department, Respondents.**

**No. 4511.**

Court of Appeals of South Carolina.

Heard Jan. 21, 2009.

Decided Feb. 25, 2009.

Rehearing Denied May 4, 2009.

---

**5.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Thomas R. Goldstein, of North Charleston, for Appellant.

Timothy Alan Domin, of Charleston, for Respondents.

GEATHERS, J.:

In this appeal, Jeffrey Harbit (Harbit) argues that the circuit court improperly granted summary judgment in favor of the City of Charleston (the City) on several claims stemming from the City's refusal to rezone Harbit's single family residential property for limited commercial use. We affirm.

## FACTS

Harbit is the owner of property located at 7 Wesley Drive, which is within the City's limits. The property is on the corner of Wesley Drive and Stocker Drive. The house at 7 Wesley Drive faces Wesley Drive with a rear entrance and driveway accessible only from Stocker Drive. Wesley Drive is a five-lane thoroughfare, connecting Folly Road to Highways

17 and 61. Stocker Drive is a purely residential street, which may be accessed from the heavier-traveled Wesley Drive.

At all times pertinent to this appeal, this property has been zoned for single family residential purposes. Harbit purchased this property in 2003 for $180,000 from Truett Nettles (Nettles). Prior to selling the property to Harbit, Nettles attempted to rezone the property for limited commercial use as an attorney's office, but the City denied his request. Harbit was aware of the City's denial of Nettles' request for rezoning when he purchased the property from Nettles in 2003.

In 2005, Harbit applied for rezoning of the Wesley Drive property based on its location within the Savannah Highway Overlay Zone (the Zone). The Zone was created as a result of a comprehensive study of land surrounding the Ashley River Bridge in Charleston.[1] Based on this study, the City developed the "Ashley Bridge District" plan, which identified the need to maintain residential communities in the Zone, despite increased commercialization. While highlighting the need to maintain residential uses in the Zone, the plan allows certain properties along Savannah Highway and Wesley Drive to be used for limited commercial purposes, including professional office use. Under the Ashley Bridge District plan, the other properties on Harbit's side of Wesley Drive within the Zone have been rezoned for limited commercial use.

On June 15, 2005, the City of Charleston Planning Commission (the Planning Commission) reviewed Harbit's application, at which time Harbit's counsel presented Harbit's position for rezoning the Wesley Drive property. The Planning Commission, however, voted to recommend denying Harbit's rezoning application, finding the request was in contradiction to the Ashley Bridge District plan and the overall neighborhood sentiment to retain the residential use of the structures within

---

1. City of Charleston Zoning Ordinance § 54–202(e) (1996) states: "Savannah Highway SH Overlay Zone. The SH Overlay Zone is intended to allow office and neighborhood service uses in addition to the uses allowed in the base zoning district. Existing structures in the SH zone that are used for a non-residential use shall retain their residential appearance.... Parking shall be restricted to the side or rear of the principal buildings and buffering from adjoining residential lots shall be required."

the area. On September 27, 2005, Charleston City Council (City Council) received the Planning Commission's recommendation and held a public hearing to address local zoning issues, including Harbit's application. Harbit's counsel was present for the City Council meeting. City Council denied Harbit's request, citing a concern over increased commercialization, loss of residential use, and the special location of the property at the entrance of a residential neighborhood, particularly its frontage on a purely residential street.

After City Council's denial of his application, Harbit appealed the zoning decision to the circuit court and asserted additional grounds for relief, including a request for a writ of mandamus and causes of action for due process and equal protection violations. The City filed a motion for summary judgment on all claims, which the circuit court granted. In its order, the circuit court found a writ of mandamus was inappropriate because zoning is not a ministerial act and thus cannot be mandated by the court.[2] In dismissing Harbit's claims for procedural and substantive due process, the circuit court found Harbit was provided with sufficient notice to satisfy his procedural due process rights, and because he had no prior property interest in commercial zoning, his substantive due process rights were not violated. Regarding Harbit's equal protection claim, the circuit court found City Council had a rational basis for denying Harbit's application such that Harbit was afforded equal protection of the law. It is from this order that Harbit now appeals.

## STANDARD OF REVIEW

An appellate court reviews the grant of summary judgment under the same standard applied by the circuit court. *David v. McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). The circuit court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Russell v. Wachovia Bank, N.A.,* 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003). In determining whether

---

2. Harbit does not appeal the circuit court's decision on this issue.

any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of the law. *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 134, 659 S.E.2d 496, 498 (2008).

## ISSUE ON APPEAL

Do genuine issues of material fact exist on Harbit's claims such that the circuit court erred in granting summary judgment to the City as a matter of law?

## LAW/ANALYSIS

### A. "Fairly Debatable" Standard in Zoning Decisions

Harbit asserts that viewing the evidence in his favor, City Council's refusal to rezone Harbit's property is so unreasonable that this Court should invalidate City Council's decision. We disagree.

Rezoning is a legislative matter. *Lenardis v. City of Greenville*, 316 S.C. 471, 471, 450 S.E.2d 597, 597 (Ct.App. 1994). The legislative body's decision in zoning matters is presumptively valid, and the property owner has the burden of proving to the contrary. *Rushing v. City of Greenville*, 265 S.C. 285, 288, 217 S.E.2d 797, 799 (1975). The authority of a municipality to enact zoning ordinances that restrict the use of privately owned property is founded in the municipality's police power. *Rush v. City of Greenville*, 246 S.C. 268, 276, 143 S.E.2d 527, 530–31 (1965). The governing bodies of municipalities clothed with authority to decide residential and industrial districts are better qualified by their knowledge of the situation to act upon these matters than are the courts, and their decisions will not be interfered with unless there is a plain violation of the constitutional rights of citizens. Id. As in this case, the determinative question is whether the city

council's refusal to change the zoning of the owner's property is so unreasonable as to impair or destroy the owner's constitutional rights. *Rushing,* 265 S.C. at 288, 217 S.E.2d at 799. We cannot insinuate our judgment into a review of the city council's decision but must leave that decision undisturbed if the propriety of that decision is even "fairly debatable." *Knowles v. City of Aiken,* 305 S.C. 219, 223, 407 S.E.2d 639, 642 (1991).

 Additionally, there is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application, and when the planning commission and the city council of a municipality have acted after reviewing all of the facts, the court should not disturb the finding unless such action is arbitrary, unreasonable, or in clear abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority. *Bob Jones Univ., Inc. v. City of Greenville,* 243 S.C. 351, 360, 133 S.E.2d 843, 847 (1963). Likewise, the power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the court's function to pass upon the wisdom or expediency of municipal ordinances or regulations. *Id.*

 We find that City Council's decision is "fairly debatable" because the City proffered several reasonable grounds for the denial of Harbit's rezoning application. First, the Planning Commission and City Council concluded that rezoning Harbit's property would not be in the community's best interests because the City has a vested interest in preserving the area's residential character and in minimizing commercialization. As stated in the Ashley Bridge District Plan, one of the major concerns in this area was increased commercialization due to rezoning. Further, both the Planning Commission and City Council cited concerns of neighborhood residents who feared loss of residential use in the area and the possibility that continued rezoning would create a domino effect. While all of the residents' concerns might not be well-founded, City Council's response to public opposition does not rise to the level of a constitutional violation. *See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach,* 420 F.3d 322, 329 (4th Cir.

2005) (in finding the state court of appeals' decision was not res judicata of the developers' § 1983 due process and equal protection claims, the Fourth Circuit Court of Appeals determined the city council's improper denial of the zoning application in response to public opposition did not rise to the level of a constitutional violation because "matters of zoning are inherently political, and [ ] it is a zoning official's responsibility to mediate disputes between developers[ ] and local residents").

Additionally, City Council specifically cited the unique location of Harbit's property as opposed to other properties on Wesley Drive that were zoned for limited commercial use, noting that two of its sides are situated on the interior of the neighborhood. Moreover, because it is a corner lot, the property effectively serves as a buffer between the heavier-traveled Wesley Drive and the purely residential Stocker Drive. *See Hampton v. Richland County,* 292 S.C. 500, 503, 357 S.E.2d 463, 465 (Ct.App.1987) (finding the city council's refusal to rezone property from an office and industrial classification to a general commercial classification was "fairly debatable" because the property lay between commercial and residential properties thus creating a buffer between the two zones).

While other similarly situated properties on Wesley Drive are zoned for limited commercial use, the record does not indicate that Harbit was the subject of purposeful, invidious discrimination. *See Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 825 (4th Cir.1995) (internal citations omitted) ("If disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim."). For instance, there are other properties on Harbit's side of Wesley Drive that are currently zoned residential, and with the exception of one property cornering on Savannah Highway and Wesley Drive, all of the properties on the other side of Wesley Drive are zoned residential. The properties on his side of Wesley Drive that are zoned for limited commercial use are distinguishable in that they either also front on Savannah Highway or are not accessed by a purely residential street.

· Based on the evidence in the record, the City properly denied Harbit's rezoning application in an effort to hold the line on commercial development in the area and protect its residential nature. We will not invalidate City Council's decision as its propriety is at least "fairly debatable" based on the facts and is not "so unreasonable as to impair or destroy constitutional rights." *See Knowles,* 305 S.C. at 224, 407 S.E.2d at 642. As such, it is not this Court's function to pass upon the wisdom or expediency of City Council's decision. *See Bob Jones Univ., Inc.,* 243 S.C. at 360, 133 S.E.2d at 847.

## B. Due Process

Harbit contends the circuit court erred in dismissing his procedural and substantive due process claims. We disagree.

### 1. Procedural Due Process

Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution. U.S. Const. amends. V and XIV, § 1; *Mathews v. Eldridge,* 424 U.S. 319, 331, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The fundamental requirements of due process under the United States Constitution and the South Carolina Constitution include notice, an opportunity to be heard in a meaningful way, and judicial review. U.S. Const. amends. V and XIV, § 1; S.C. Const. art. 1, § 22; *Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health and Envtl. Control,* 305 S.C. 90, 94, 406 S.E.2d 340, 342 (1991). Further, due process is flexible and calls for such procedural protections as the particular situation demands. *Kurschner v. City of Camden Planning Comm'n,* 376 S.C. 165, 172, 656 S.E.2d 346, 350 (2008).

We are of the opinion that Harbit received due process, both procedural and substantive, thus entitling the City to judgment as a matter of law. First, Harbit was afforded procedural due process because he was provided with notice of both public hearings as evidenced by the rezoning application that he completed and signed.[3] He also had a meaningful

---

3. The rezoning application that Harbit signed states, "The Planning Commission will hold **a public hearing** and make a recommendation to

opportunity to be heard as he was allowed to present his arguments at both the Planning Commission and City Council levels. While Harbit chose not to be present, his attorney represented Harbit's interests by presenting exhibits and arguing Harbit's position for rezoning his property in both instances.

Further, Harbit has received three levels of review, in each of which he was allowed to present his position.[4] The existence of review is an indication of the presence of procedural due process, rather than its absence. *See Sunrise*, 420 F.3d at 328 (finding district court properly granted city's motion for summary judgment on developers' claims for due process violations after city denied building permit as developers received four levels of state review which was "an indication of the existence of procedural due process, rather than its absence"). Because Harbit was provided with both predeprivation and postdeprivation remedies, his procedural due process rights were not violated.

## 2. Substantive Due Process

In order to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law. *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 430, 593 S.E.2d 462, 470 (2004). The State's deprivation of the property interest must fall so far beyond the outer boundaries of legitimate governmental authority that no process could remedy the deficiency. *Sunrise*, 420 F.3d at 328. A legislative body does not deny due process simply because it does not permit a landowner to make the most beneficial use of its property. *Bear Enters. v. County of Greenville*, 319 S.C. 137, 141, 459 S.E.2d 883, 886 (Ct.App.1995). In reviewing a substantive due process challenge to a zoning ordinance, we

---

City Council for approval, approval with conditions, disapproval or deferral of the rezoning.... After the Planning Commission makes its recommendation, the application will be forwarded to City Council where **another public hearing** will be held approximately one month later." (emphasis added).

4. The Planning Commission's recommendation was reviewed by City Council, whose decision was then reviewed by the circuit court, and is now before this Court.

must determine whether the ordinance bears a reasonable relationship to any legitimate government interest. *See Sunset*, 357 S.C. at 430, 593 S.E.2d at 470 (stating that the standard of review for all substantive due process challenges to state statutes, including municipal ordinances, is whether the statute bears a reasonable relationship to any legitimate interest of government).

The City did not violate Harbit's substantive due process rights when it denied his rezoning application. First, Harbit did not have a prior property interest in commercial zoning. While Harbit may have purchased the property with the expectation that City Council would grant his application, this alone is insufficient to establish a violation of his constitutional rights. *See Rush*, 246 S.C. at 280–81, 143 S.E.2d at 533 (citing to 62 C.J.S., *Municipal Corporations*, § 227(11)) ("Although it is an element in the situation which is entitled to fair and careful consideration, mere disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions ordinarily does not warrant relaxation in his favor...."); *Hampton*, 292 S.C. at 503–04, 357 S.E.2d at 465 (holding a property owner is not entitled to have his property zoned for its most profitable use).

Furthermore, Harbit was aware at the time of purchasing 7 Wesley Drive that the prior owner's application had been denied based on the same zoning restrictions and that his efforts might likely share the same fate. *See id.* at 281, 143 S.E.2d at 533 (internal citation omitted) (in denying the plaintiff's variance request, the supreme court found that the plaintiff who purchased property after a zoning restriction was in effect must have contemplated potential hardships, financial or otherwise, resulting from the existing conditions at the time of purchase). Because the City's decision was reasonably founded and rationally related to its stated interests of preserving the area's residential character in the face of continuing commercialization, whether it be strictly commercial or limited commercial use, the City's actions did not rise to the level of being arbitrary or capricious and thus did not violate Harbit's substantive due process rights.

## C. Equal Protection

Harbit also asserts the circuit court erred in dismissing his equal protection claim. We disagree.

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see* S.C. Const. art. I, § 3 ("The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."). This clause requires that "the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose." *Sylvia Dev. Corp.*, 48 F.3d at 818. It does not prohibit different treatment of people in different circumstances under the law. *Town of Iva ex rel. Zoning Administrator v. Holley*, 374 S.C. 537, 541, 649 S.E.2d 108, 110 (Ct.App.2007). Instead, " 'the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Id.* In a case such as this, the rational basis standard, rather than strict scrutiny, applies because the classification at issue does not affect a fundamental right and does not draw upon inherently suspect distinctions such as race, religion, or alienage. *Sunset Cay*, 357 S.C. at 428–29, 593 S.E.2d at 469.

Further, one seeking to show discriminatory enforcement in violation of the Equal Protection Clause must demonstrate arbitrary and purposeful discrimination in the administration of the law being enforced. *See State v. Solomon*, 245 S.C. 550, 574, 141 S.E.2d 818, 831 (1965). "[E]ven assuming [a governmental entity] is not enforcing [an] ordinance equally, the fact that there is some unequal treatment does not necessarily rise to the level of a constitutional equal protection violation." *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 96, 596 S.E.2d 917, 922 (2004).

The City had a rational basis to deny Harbit's application, despite the fact that other properties on Wesley Drive were zoned for limited commercial use. As the circuit court notes in its order, Harbit's property is the only one of those properties which has frontage on Stocker Drive. Further, unlike the other properties, Harbit's property effectively serves as a

buffer between the purely residential Stocker Drive and the heavier-traveled Wesley Drive. In contrast to Harbit's property, the other corner property on his side of Wesley Drive that is zoned for limited commercial use has frontage on Savannah Highway and abuts other commercial property. Consequently, because the record does not indicate that Harbit was the subject of purposeful, invidious discrimination, the circuit court did not err in granting summary judgment on his equal protection claim. *See Sylvia Dev. Corp.*, 48 F.3d at 825 (internal citations omitted) ("While an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals, a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim."). Consequently, the circuit court appropriately granted summary judgment on Harbit's claims stemming from the denial of his rezoning application.

## CONCLUSION

Based on the foregoing, the circuit court did not err in granting the City's motion for summary judgment.

Accordingly, the circuit court's order is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.