719 S.E.2d 660

**Peggy McMASTER, d/b/a PJM Properties and Gray McGurn, Appellants,**

v.

**COLUMBIA BOARD OF ZONING APPEALS, Christopher Barczak, Ernest W. Cromartie, III, Elaine Gillespie, Alvin Hinkle, Lowndes T. Pope, Charles Watson, and Elizabeth Webber–Akre, in their official capacities as members of the Columbia Board of Zoning Appeals and City of Columbia, Respondents.**

No. 27075.

Supreme Court of South Carolina.

Heard Oct. 19, 2011.

Decided Dec. 12, 2011.

500

Henry Dargan McMaster, of Columbia, Lance S. Boozer, of Tompkins & McMaster, of Columbia, for Appellants.

Peter Michael Balthazor, of Columbia, for Respondents.

Danny C. Crowe and R. Hawthorne Barrett, of Turner Padget Graham & Laney, of Columbia, for Amicus Curiae Municipal Association of South Carolina, Marcus A. Manos, of Nexsen Pruet, of Columbia, and Thomas R. Gottshall, of Haynsworth Sinkler Boyd, of Columbia, for Amicus Curiae University Hill Neighborhood Association of Columbia.

PER CURIAM.

This case requires us to consider whether the City of Columbia Zoning Ordinance (hereinafter "the Ordinance"), which limits to three the number of unrelated persons who may reside together as a single housekeeping unit, violates the Due Process Clause of the South Carolina Constitution. We find it does not.[1]

## I.

The facts of this case are not in dispute. The property which is the subject of this appeal ("the property") is owned by Appellant McMaster and is located in the City of Columbia ("the City") in the immediate vicinity of the University of South Carolina. The property constitutes a single dwelling unit and is located within a RD–DP zoning district.[2] Pursuant

---

1. Although the freedom to select one's cohabitants could, under some circumstances, implicate the freedom of association guaranteed by the First Amendment of the United States Constitution, we emphasize that we address only the limited argument before us—namely the rights of a landlord vis-à-vis a due process challenge under the South Carolina Constitution.

2. Districts designated as RD "are intended as one- and two-family residential areas with attached and detached units with medium to high population densities." Columbia City Code § 17-234. The DP designation, when appended to a basic district classification, is intended to further the purpose and intent of the Ordinance, including protecting and improving the quality of the environment of the City by encouraging "the identification, recognition, conservation maintenance and enhancement of areas, sites, structures, fixtures and other features of the architectural, economic, social, cultural and political history of the City as well as its natural features; to encourage appropriate use of such features, areas, and sites, structures and fixtures; and to restrain influences adverse to such purposes, and by so doing to promote the public welfare." Columbia City Code § 17-251.

to the Ordinance, only one "family" may occupy a single dwelling unit. The Ordinance defines family as "an individual; or two or more persons related by blood or marriage living together; or *a group of individuals, of not more than three persons, not related by blood or marriage but living together as a single housekeeping unit.*" Columbia City Code § 17–55 (emphasis added).

At the time this dispute arose, the property was occupied by four unrelated individuals—Appellant Gray McGurn and three other young women, all of whom were undergraduate students at the University of South Carolina. The occupants were friends, shared meals and expenses, and operated as a single household.

After receiving a neighborhood complaint, the City's Zoning Administrator conducted an investigation and determined that more than three unrelated individuals were occupying the property, in violation of the Ordinance. The City sent McMaster a notice of zoning violation, directing that occupancy be reduced to no more than three unrelated persons within thirty days. McMaster appealed the violation notice to the City's Board of Zoning Appeals ("the Board"), arguing the Ordinance was not violated and, in the alternative, the Ordinance was unconstitutional. Following a hearing, the Board affirmed the zoning violation.

Appellants appealed the Board's decision to the circuit court pursuant to S.C.Code § 6–29–820, challenging the constitutionality of the Ordinance under federal and state law, which was narrowed to a challenge under our state constitution. Following a hearing, the circuit court found the Ordinance's definition of family did not violate the Due Process Clause of the South Carolina Constitution. Specifically, the circuit court found Appellants failed to meet their burden of proving the limitations set forth in the Ordinance were not reasonably related to any legitimate governmental interest. The circuit court further found the City had not acted arbitrarily or wrongfully in passing the Ordinance and, therefore, had not infringed upon Appellants' substantive due process rights under the state constitution.

Because Appellants challenge the constitutionality of the Ordinance, the matter was directly appealed to this Court.

*See* S.C.Code § 14–8–200(b)(3) (Supp.2010) (providing the right of appeal from a final judgment involving a challenge on state or federal grounds to the constitutionality of a municipal ordinance lies directly to the Supreme Court).

## II.

An issue regarding interpretation of a legislative enactment is a question of law. *City of Rock Hill v. Harris,* 391 S.C. 149, 152, 705 S.E.2d 53, 54 (2011). In a case raising a novel question of law, the Court is free to decide the question with no particular deference to the lower court. *Id.*

## III.

Appellants argue that the Ordinance's definition of "family," which limits to three the number of unrelated persons who may reside together as a single housekeeping unit, arbitrarily and capriciously deprives them of a cognizable property interest in violation of the Due Process Clause of the South Carolina Constitution.[3] We disagree.

"A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Town of Scranton v. Willoughby,* 306 S.C. 421, 422, 412 S.E.2d 424, 425 (1992). "[E]very presumption will be made in favor of the constitutionality of a legislative enactment; and a statute will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution." *Harris,* 391 S.C. at 154, 705 S.E.2d at 55. "[T]he power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the Court

---

3. Appellants also raise equal protection and privacy challenges to the Ordinance. However, the circuit court's ruling did not specifically address those grounds, and Appellants failed to make a Rule 59(e), SCRCP, motion. Accordingly, those issues are not preserved for review, and we do not address them. *See Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000) (finding a trial judge's general ruling was insufficient to preserve a specific issue for appellate review and where a trial judge does not explicitly rule on an argument raised and no Rule 59(e), SCRCP, motion was filed, an appellate court may not address the issue).

to pass upon the wisdom or expediency of municipal ordinances or regulations." *Rush v. City of Greenville*, 246 S.C. 268, 276, 143 S.E.2d 527, 531 (1965).

 "The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property is founded in the police power." *Id.* In reviewing substantive due process challenges to municipal ordinances, a court must consider whether the ordinance bears a reasonable relationship to *any* legitimate interest of government. *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 96, 596 S.E.2d 917, 923 (2004). The validity of a particular zoning ordinance must be considered not in the abstract, but in connection with the locality and surrounding circumstances. *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–88, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (noting the line dividing valid and invalid zoning ordinances is not capable of precise delimitation but rather varies with the surrounding circumstances and stating that "[a] regulatory zoning ordinance, which would clearly be valid as applied to the great cities, might be clearly invalid as applied to rural communities").

 "In order to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law." *Denene* 359 S.C. at 96, 596 S.E.2d at 923. "The burden of proving the invalidity of a zoning ordinance is on the party attacking it, and it is incumbent upon [the challenger] to show the arbitrary and capricious character of the ordinance through clear and convincing evidence." *Id.* "A legislative body does not deny due process simply because it does not permit a landowner to make the most beneficial use of its property." *Harbit v. City of Charleston*, 382 S.C. 383, 394, 675 S.E.2d 776, 782 (Ct.App.2009).

In *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the United States Supreme Court considered the constitutionality of a similar zoning ordinance which prevented more than two unrelated persons from living together in the same household. Belle Terre charged the property owner with violating the zoning ordinance after he rented the home to six unrelated students from a local university. The Supreme Court found zoning ordinances which limit

the number of *unrelated* people who may live together in one household do not implicate a fundamental right of association or privacy and are a valid exercise of a state's police power.[4] *Id.* at 7–9, 94 S.Ct. 1536.

Although *Belle Terre* established that the federal constitution does not afford substantive due process protection in this instance, state courts are free to conclude that their respective state constitutions do provide such protection. Appellants argue the City's definition of "family" is arbitrary and capricious and bears no rational relationship to any legitimate state interest of government in violation of the South Carolina constitution.[5] Appellants also argue the Ordinance excludes

4. Three years later, the United States Supreme Court found a zoning ordinance which restricted the categories of *related* individuals who could live together as a single housekeeping unit infringed upon the fundamental rights regarding "personal choice in marriage and family life." *See Moore v. City of E. Cleveland,* 431 U.S. 494, 496–500, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (specifically distinguishing *Belle Terre* as not involving the fundamental freedom of personal choice in matters of marriage and family life).

5. As Appellants note, four states have found similar zoning provisions limiting occupancy of unrelated individuals to be unconstitutional. Those states have done so, generally, because the ordinances preclude functional families from living together. Only California has determined that unrelated individuals possess a fundamental right to choose cohabitants. *See City of Santa Barbara v. Adamson,* 27 Cal.3d 123, 164 Cal.Rptr. 539, 610 P.2d 436 (1980) (finding the right to choose one's unrelated cohabitants is encompassed within the fundamental right to privacy protected by the California Constitution and applying strict scrutiny in striking down the zoning ordinance). The remaining three states did not find the challenged zoning ordinances implicated a fundamental right; rather, those states found the zoning ordinances did not withstand rational basis review. *See Delta Charter Twp. v. Dinolfo,* 419 Mich. 253, 351 N.W.2d 831 (1984) (finding an ordinance limiting occupation of single-family residences to any number of related individuals and not more than one other unrelated person violated state constitution's due process clause because it was not rationally related to governmental objectives); *State v. Baker,* 81 N.J. 99, 405 A.2d 368 (1979) (construing state constitution and existing case law to require zoning restrictions to be accomplished "in the manner which least impacts upon the right of individuals to order their lives as they see fit"); *McMinn v. Oyster Bay,* 105 A.D.2d 46, 482 N.Y.S.2d 773 (1984) (noting the unique language of the Due Process Clause of the New York Constitution and the suburban evolution away from "child-centered family units" and finding a zoning ordinance restricting households to

many groups of individuals which should be permitted to reside together as a single housekeeping unit.[6]

However, as many other states have found,[7] we find the rationale of *Belle Terre* persuasive and find there is a rational relationship between the Ordinance's definition of "family" and the legitimate governmental interests the Ordinance seeks to further. *See Belle Terre* 416 U.S. at 8, 94 S.Ct. 1536 ("[E]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function."). Where the rational

related persons was arbitrary and unreasonable and failed the rational relationship test).

**6.** Appellants argue the Ordinance impermissibly excludes various household units comprised of unrelated people, including: two unrelated elderly people with two unrelated caretakers or a residence shared by four unrelated foreign exchange students, young professionals, nuns, judges or legislators. However, because Appellants are not included in any of these particular non-traditional family scenarios, they are not before us and we do not address them. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."); *In the Interest of Amir X.S.,* 371 S.C. 380, 385, 639 S.E.2d 144, 146 n. 2 (2006) ("The traditional rule of standing for facial attacks provides that one to whom application of a statute is constitutional may not attack the statute on grounds that it might be unconstitutional when applied to other people or situations.").

**7.** The overwhelming majority of states that have considered the issue have found similar ordinances restricting the number of unrelated persons that may live together to be constitutional. *E.g., Dinan v. Bd. of Zoning Appeals,* 220 Conn. 61, 595 A.2d 864 (1991) (restricting the definition of family serves to provide an element of cohesion not to be found in occupancy of property by individuals with separate rental agreements and no common bond of significant duration); *Ames Rental Prop. Ass'n v. City of Ames,* 736 N.W.2d 255 (Iowa 2007) (noting that many of the cases addressing similar ordinances involve college towns); *State v. Champoux,* 252 Neb. 769, 566 N.W.2d 763 (1997) (noting the fact that the City of Lincoln could have chosen to effectuate its objectives in a variety of other ways does not demonstrate any constitutional defect in the zoning ordinance restricting the definition of "family"); *City of Brookings v. Winker,* 554 N.W.2d 827 (S.D.1996) (noting the unavoidable population density problems in college towns and finding party challenging statute failed to establish facts sufficient to overcome the ordinance's presumption of validity).

relationship standard is utilized, the law must be upheld if it furthers any legitimate governmental purpose. Further, we must consider the Ordinance in the context of the surrounding area, including the fact that the City is home to several colleges and universities.[8]

With that in mind, we find the Ordinance is a valid exercise of the City's broad police power and that there is a rational relationship between the City's decision to limit to three the number of unrelated individuals who may live together as a single housekeeping unit and the legitimate governmental interests of controlling the undesirable qualities associated with "mass student congestion." *Cf. Harbit*, 382 S.C. at 395, 675 S.E.2d at 782 (finding that because the City of Charleston's zoning decision was reasonably founded and rationally related to its stated interests of preserving the area's residential character, the city's action in denying a rezoning application did not rise to the level of being arbitrary or capricious and thus did not violate the property owner's substantive due process rights). Because we find the Ordinance is rationally related to a legitimate governmental purpose, we find it does not violate the Due Process Clause of the South Carolina Constitution.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

---

8. In finding the Iowa Constitution was not violated by a zoning ordinance of the town of Ames, home of Iowa State University, which restricted the number of unrelated persons who may live together to three, the Supreme Court of Iowa noted that "it cannot be ignored that Ames is a university campus city and therefore, experiences typical secondary effects of mass student congestion." *See Ames Rental Prop. Ass'n*, 736 N.W.2d at 261 ("Based on its experience with students living off campus, the Ames city council made a reasonable policy decision to limit to three the number of unrelated persons who may reside in a single-family dwelling in certain areas. It did so because groups of unrelated persons typically have different living styles in comparison to groups of related persons.... By limiting the number of unrelated persons who may live together, Ames's ordinance furthers the City's goal of creating family-oriented neighborhoods that are safe and quiet for young children.").