## 18519

Max B. KING, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant

(149 S. E. (2d) 64)

*Messrs. Daniel R. McLeod, Attorney General,* and *E. N. Brandon, Assistant Attorney General* of Columbia, and *E. Harry Agnew,* of Anderson, *for Appellant,*

*Messrs. Sherard & McIntosh,* of Anderson, *for Respondent,*

June 13, 1966.

BUSSEY, Justice.

This action was commenced by the respondent King alleging an unconstitutional taking by the appellant Highway Department of a strip of land on North Main Street in Anderson County, which unconstitutional taking was denied by the Department. The trial of the case resulted in a jury verdict for the respondent in the amount of $15,300, following which the trial judge overruled motions of the Department for judgment *non obstante veredicto,* a new trial and a new trial *nisi,* and the Department appeals.

The respondent is the owner of a lot, with a service station thereon, located at the corner of North Main Street and Concord Road. It is undisputed that in early 1963 the Department made certain preliminary surveys in accordance with a contemplated plan to widen North Main Street, it being originally planned to widen such to the extent of forty-five feet from the center. This plan would have required the acquisition of a right-of-way over a portion of the respondent's property which was concededly beyond the existing right-of-way line. No notice of condemnation was served, but there were some negotiations as to price.

At some time thereafter, precisely when does not appear, the Department concluded that the proposed project could

be accomplished by using a right-of-way of only thirty-seven and a half feet from the center which would be within a total right-of-way of seventy-five feet, which it contended it already owned. The evidence reflects that, at some time about April, 1963, representatives of the Department notified the respondent of the Department's contention that it owned a seventy-five foot right-of-way, and ceased any further negotiations with him as to the acquistion of any additional right-of-way.

The Department's contention that it owned a total right-of-way of seventy-five feet was based, not on a grant, but on a claim of dedication by virtue of a plat placed on record when the respondent purchased the lot, in 1953, and on the additional claim of user and maintenance over a long period of years. In June, 1964, construction was commenced, in the course of which the seventy-five foot right-of-way, claimed by the Department, was utilized. The respondent's contention is that the claimed seventy-five foot right-of-way included a strip of land some thirteen feet in width, which he owned, and as to which the Department had acquired no right-of-way.

On the trial, evidence as to the value of the strip of land varied from three thousand dollars to six thousand dollars, and the verdict of the jury reflects that it, of necessity, included a most substantial sum for severance or proximity damages. The respondent's service station was totally destroyed by fire in the summer of 1963, (possibly August), necessitating the building of a new one, the location thereof being somewhat different from the old one. The respondent, however, made no effort to establish what, if any, severance damages he sustained as a result of the construction commenced in June 1964, which for the purpose of this appeal, was an unconstitutional taking, the jury having determined the ownership of a right-of-way over the strip of land adversely to the Department.

On the trial of the case the respondent offered the evidence of one Felton as to an appraisal made by him of the respond-

ent's property some time during the early part of 1963, including testimony by him to the effect that the severance damage at that time amounted to twenty thousand dollars. The Department moved to strike said witness's testimony as to severance damage, contending that any taking by the Department did not occur until June, 1964; that there was no evidence of any taking by the Department at any prior time, the witness's testimony as to severance damage being predicated solely on and related to buildings and improvements on the property at the time of his appraisal, but not on the property at the time of any taking by the Department. The trial judge refused this motion, basing his refusal on the view that there was evidence of a taking in 1963, prior to the destruction of the improvements by fire.

It is conceded that any damages to which the respondent is entitled for an unconstitutional taking must be fixed as of the time of the taking. The sole issue presented by this appeal is whether there is any evidence showing a "taking" by the Department prior to the time the improvements were destroyed by fire. If there was no such evidence, then it follows that the testimony of the witness Felton as to severance damage was not only irrelevant, but highly prejudicial, and should have been stricken.

A number of decisions of this court have dealt with what constitutes a taking of property in violation of the Constitution, but probably none of them more comprehensively than the case of *Webb v. Greenwood County*, 229 S. C. 267, 92 S. E. (2d) 688. South Carolina has consistently taken the broadest possible view of what is a "taking" and has construed the least actual "damage" to be a taking. In the construction of Article I, Sec. 17 of the Constitution of 1895, no distinction is recognized between "taking" and "damaging," and the deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a "taking" as though the property were actually apropriated. It is settled that a "taking" occurs when a legal remedy becomes avail-

able. A cause of action arises and a legal remedy becomes available when the property is either actually appropriated, injured or damaged.

Under the foregoing well settled principles of law, the inquiry becomes whether under the evidence any conduct attributed to the Department during 1963, prior to the fire, gave rise, at that time, to a cause of action for the appropriation of, or injury or damage to the property in question. Respondent's entire claim that a taking occurred in 1963, prior to the fire, is based on his testimony that the Department "came upon" and "claimed" the property; that Department engineers "surveyed it off and made yellow marks on it"; and that certain unidentified representatives of the Department had informed him about April, 1963, that they had discovered that the Department already owned a seventy-five foot right-of-way. Respondent did not elaborate upon what he meant by "came upon", nor did he elaborate upon the "yellow marks" referred to. At least inferentially, the yellow marks indicated the boundary of the seventy-five foot right-of-way claimed by the Department as an already existing one.

The respondent concedes that the preliminary surveys made by the Department did not constitute a taking. He does not contend that the various comings and goings upon the property in connection with the surveys and the attendant negotiations between the parties constituted a taking. The record contains no evidence of any physical damage or injury to the property itself by the Department, prior to the commencement of construction in 1964, leaving only the question of whether the Department actually appropriated any part of the property about April, 1963.

· Respondent's testimony, viewed in the most favorable light, is, at best, very vague as to persons and times. In view of the undisputed and conceded facts as to the negotiations, surveys, etc., it appears that respondent's claim as to a taking, prior to the time of the fire, rests on nothing more than the fact that at some time about April 1963, a representative

or representatives of the Department came to the service station property, advised respondent of the Department's claim of an existing seventy-five foot right-of-way, and pointed out to the respondent the boundary thereof on the ground. At the same time, or some time thereabout, respondent was advised that the Department had abandoned any intention of acquiring any additional right-of-way beyond the bounds of the claimed seventy-five foot right-of-way.

There is not even a suggestion in the record that the Department had any contact whatever with the property subsequently to the foregoing events until construction commenced in June, 1964. There is not the slightest evidence that there was any bad faith on the part of the Department as to its claim. There is no evidence that the Department went into possession of the property, or any part thereof, prior to June, 1964, and no suggestion that the respondent was ordered off of the property or that his possession and full use thereof was in any other way interfered with. As far as the record shows, the respondent continued fully and completely in the ordinary, beneficial use and enjoyment of the property quite as freely, after being notified of the claim of the Department as to the boundary of the existing right-of-way, as he did theretofore.

We know of no authority and have been cited none for the proposition that a mere good faith assertion of an adverse claim to property, communicated to the owner thereof, would give rise to a cause of action for injury or damages. Respondent's claim as to a taking about April, 1963, is based on nothing more. Had he commenced action promptly after the communication, what legal cause of action for injury or damage could he then have alleged or proved? We think the answer is obviously none. It follows that no taking then occurred. Any damages which he is entitled to in this action must necessarily relate to conditions on the property at the time of the taking and, hence, the testimony of Felton should have been excluded on the motion of the Department.

The respondent urges, *inter alia*, that the Department's motion came too late, counsel for the Department not having objected to the testimony of Felton in the course of his examination and cross examination. It is, of course, true, that a motion to strike out testimony, after it has been admitted without objection, is ordinarily within the discretion of the trial judge. *Fabian v. Rephan,* 192 S. C. 483, 7 S. E. (2d) 223; *In re Limehouse's Estate,* 198 S. C. 15, 16 S. E. (2d) 1. In the instant case, however, no point was made by either counsel or the trial judge that the motion was not timely and the motion was not denied on that ground, but the denial of the motion was based on the erroneous legal conclusion of the trial judge that the respondent's evidence proved a taking prior to the fire.

For the reasons hereinabove set forth, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

Moss, C. J., Lewis and Brailsford, JJ., and W. L. Rhodes, Jr., Acting Associate Justice, concur.