744 S.E.2d 203

In re ESTATE OF Atn Burns LIVINGSTON, Emma Lou Livingston Martin as Personal Representative of the Estate of Atn Burns Livingston, and Emma Lou Livingston Martin, Respondents/Appellants,

v.

Clyde B. LIVINGSTON; Miller Communications, Inc.; Citibank South Dakota, N.A.; Branch Banking and Trust Company of South Carolina; and American First Federal, Inc., Defendants,

Of whom Clyde B. Livingston is, Appellant/Respondent.

Appellate Case No. 2010–179986.

No. 5078.

Court of Appeals of South Carolina.

Heard Dec. 11, 2012.
Decided Jan. 30, 2013.
Rehearing Denied June 12, 2013.

138

Andrew S. Radeker, of Harrison and Radeker, P.A., of Columbia, for Appellant/Respondent.

Richard B. Ness, of Ness and Jett, LLC, of Bamberg, for Respondents/Appellants.

KONDUROS, J.

In this cross-appeal, the parties dispute the master's findings concerning farmland in North, South Carolina, devised in a will. Clyde Livingston argues the master erred in concluding (1) the United States Department of Agriculture (the USDA) benefits were estate property and (2) the statute of limitations did not bar Emma Livingston Martin's claim to collect repayment of those benefits. Emma, both personally and on behalf of the estate, contends the master erred by (1) failing to apply the probate code, (2) applying section 15–61–25 of the South Carolina Code (2009), governing partition, (3) allowing Clyde to retain one-half of the USDA subsidies, and (4) concluding judgments of an heir-at-law affects the ability of a personal representative (PR) of an open estate to convey good title to real estate. We affirm in part, reverse in part, and remand.

**FACTS/PROCEDURAL HISTORY**

Atn Burns Livingston died in 1999. His will named his two children, Emma and Clyde, as sole heirs and PRs of his estate.

In 2000, Clyde applied for farm operator status with the USDA. Clyde signed the application in two capacities, signing as the farmer applicant and noting he was signing on behalf of the estate, which was the owner of the land. From 2000 to 2008, Clyde received USDA subsidy payments totaling $29,902.

On January 18, 2002, the probate court removed Clyde as co-PR of the estate on the ground that he and Emma could not cooperate. Emma has served as the sole PR of the estate since that time. In April 2002, Emma received a letter from the USDA regarding Clyde's status as a farm operator. She spoke with officials at the local USDA office, who informed her that Clyde had been receiving farm subsidy payments.

Emma notified her attorney, who had been assisting her with the closing of the estate, about the subsidy payments. Her attorney discussed this issue with Clyde's attorney and on May 30, 2006, Emma brought a claim seeking reimbursement for the USDA subsidies on behalf of the estate. The case was filed in the probate court and was removed to circuit court in April 2007. The case was then referred to the master on August 19, 2008. Also in 2008, Emma, as PR of the estate, began receiving the USDA subsidies. Because the issues before the master were so numerous, the case was trifurcated.

Prior to trial, the master heard Clyde's motion for summary judgment on Emma's claim concerning the USDA payments, but deferred ruling on the motion until after hearing the evidence at trial. When trial began on March 24, 2010, Emma testified and introduced the USDA records and a summary of benefit amounts paid. Clyde moved for an involuntary nonsuit on the grounds that the USDA payments were not property of the estate and the statute of limitations in section 15–3–530 of the South Carolina Code (2005) would bar the claim. The master deferred ruling on the motion.

On November 17, 2010, the master granted Clyde's motions for summary judgment and involuntary nonsuit in part and denied them in part. The master found the USDA payments were part of the estate and found Clyde liable for receiving them; however the master limited Emma's recovery to $11,690 because the "[t]he statute of limitations limits [Emma]'s recovery, on behalf of the estate, to the USDA

payments that were made within three years before this action was commenced." The master determined the recoverable portion of Emma's claim involved only $23,380, and because Clyde was a devisee entitled to one half of the estate, Emma had the right to $11,690. The master further based his decision on section 62-3-619 of the South Carolina Code (2009), *executor de son tort*, finding half of the farm subsidy payments would have gone to Clyde because he and Emma were the sole and equal devisees of the estate despite any limitation in recovery. The master denied Emma's request for prejudgment interest because she did not plead that prejudgment interest should be awarded. Both parties appealed.

## STANDARD OF REVIEW

Rule 41(b) permits the defendant, "[a]*fter the plaintiff in an action tried by the court without a jury* has completed the presentation of his evidence," to move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Rule 41(b), SCRCP (emphasis added); *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 284, 543 S.E.2d 563, 565 (Ct.App.2001); *See also Johnson v. J.P. Stevens & Co.*, 308 S.C. 116, 118, 417 S.E.2d 527, 529 (1992) (holding Rule 41(b), allows the judge as the trier of facts to weigh the evidence, determine the facts, and render a judgment against the plaintiff at the close of his case if justified). Because a dismissal under these circumstances has the same effect as summary judgment, the standard for summary judgment applies. *Id.* at 284–85, 543 S.E.2d at 566; *Ex parte United Servs. Auto. Ass'n*, 365 S.C. 50, 53, 614 S.E.2d 652, 653 (Ct.App.2005).

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be

viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct.App.2004).

## LAW/ANALYSIS

### I. USDA BENEFITS

■ Clyde argues the USDA benefits are not estate property because they were a product of a contract between himself and the USDA based on his status as a farmer operator. He maintains the estate was not a farm operator, and as such he is solely entitled to the benefits. Furthermore, he suggests he is a cotenant entitled to possess the whole of the land, which includes the USDA benefits. We disagree.

Section 62–3–101 of the South Carolina Code (2009) states: The power of a person to leave property by will and the rights of creditors, devisees, and heirs to his property are subject to the restrictions and limitations contained in this Code to facilitate the prompt settlement of estates, including the exercise of the powers of the [PR]. *Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will* or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates, or in the absence of testamentary disposition, to his heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting the devolution of intestate estates, subject to the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration, particularly the exercise of the powers of the [PR] under [s]ections 62–3–709, 62–3–710, and 62–3–711, and his personal property devolves, first, to his [PR], for the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration, particularly the exercise of the powers of the [PR] under [s]ections 62–3–709, 62–3–710, and 62–3–711, and, at the expiration of three years after the decedent's death, if not

yet distributed by the [PR], his personal property devolves to those persons to whom it is devised by will or who are his heirs in intestacy, or their substitutes, as the case may be, just as with respect to real property.

(emphasis added). Notwithstanding the immediate passage of title to heirs and devisees, the PR is entitled to possession of all real property during administration and has broad powers over real property during administration. S.C.Code Ann. § 62–3–709 (2009); S.C.Code Ann. § 62–1–201(33) (2009).

Section 62–3–709 provides in part:

Except as otherwise provided by a decedent's will, every [PR] has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the [PR], possession of the property by him will be necessary for purposes of administration.

The PR does not need to prove to the possessor of estate properties that such properties are needed for administration. *Id.* Section 62–3–709 further provides, "The request by a [PR] for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession thereof, that the possession of the property by the [PR] is necessary for purposes of administration." This statute imposes upon the PR the responsibility and authority to "take all steps reasonably necessary for the management, protection, and preservation of, the estate in his possession." *Id.*

Section 62–3–711(a) of the South Carolina Code (2009) outlines the powers of the PR and states:

Until termination of his appointment or unless otherwise provided in Section 62–3–910, a [PR] has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. Except as otherwise provided in subsection (b), this power may be exercised without notice, hearing, or order of court.

The Reporter's comments to section 62–3–711 note, "Under this section, [s]ection 62–3–101, and [s]ection 62–3–709, title to personal property (as well as real property) devolves at or

soon after death to heirs and devisees, and not to the [PR]." The Reporter's comments to section 62–3–709 state:

Section 62–3–101 provides that title to real and personal property devolves on death or thereafter to heirs or devises "subject ... to administration." Section 62–3–711 vests in the [PR] a power over title to real and personal property during administration. This section deals with the [PR]'s duty and right to possess assets, real and personal. It proceeds from the assumption that it is desirable wherever possible to avoid disruption of the possession of the decedent's assets by his heirs or devisees. But if the [PR] considers it advisable he may take possession and his judgment is made conclusive. It is likely that the [PR]'s judgment could be questioned in a later action but this possibility should not interfere with the [PR]'s administrative authority as it relates to possession of the estate.

Under section 62–3–101, real property immediately passes to the named heirs. However, Emma has the authority as PR to retain the real property under section 62–3–711. Section 62–3–711 states that "this power may be exercised without notice, hearing, or order of court." Because Emma retained the authority over the estate as the PR, the property did not pass to Clyde despite his status as a named heir in the will. The probate code presents this as an absolute right derived out of necessity to manage the estate. Thus, when a PR asserts his or her authority over the property, the PR usurps the rights of the heirs regarding the control of the real property while the estate is still being administered. In this case, the estate is still being administered; thus, Emma has the authority to retain and control the property in her capacity as PR. § 62–3–709; § 62–1–201(33). Emma's right to retain the authority over the estate supersedes Clyde's argument that he was acting within his authority as a cotenant of Emma's based on his status as an heir.

Clyde also asserts the lease agreement grants him the right to contract with the USDA. The lease agreement does not convey the right or express permission to contract with the USDA or the authority to sign for the property as the owner of the land. Also, on the application for benefits, Clyde noted the estate owned the land not him as an heir. Without express authority through ownership or contract, Clyde did

not have the authority to enter a contractual relationship with the USDA. Therefore, the master properly determined the USDA benefits belonged to the estate.

## II. STATUTE OF LIMITATIONS

Clyde argues the master erred in concluding the statute of limitations did not bar Emma's claim for USDA subsidies. Clyde suggests because Emma became aware in 2002 that he was receiving subsidies, the statute of limitations began to run upon Emma's discovery. Thus, allowing recovery based on the amount of payments he received within three years before the action was brought was in error. We disagree.

 The statute of limitations begins to run when a cause of action ought to have reasonably been discovered. *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996). In *Dean,* the supreme court stated:

> The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

*Id.* at 363–64, 468 S.E.2d at 647 (citations omitted). "The date on which discovery of the cause of action should have been made is an objective, rather than a subjective, question." *Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 355–57, 559 S.E.2d 327, 336 (Ct.App.2001). "Reasonable diligence is intrinsically tied to the issue of notice." *Id.* In *Joubert v. South Carolina Department of Social Services,* the court explained, "We have interpreted the 'exercise of reasonable diligence' to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." 341 S.C. 176, 191, 534 S.E.2d 1, 8 (Ct.App.2000) (quoting *Dean,* 321 S.C. at 364, 468 S.E.2d at 647).

 No direct case law discusses USDA benefits and statute of limitations in this context in South Carolina. However, our courts have examined the role of the statute of limitations in other settings. In the insurance context, the general rule is the renewal of a policy of insurance for a fixed term is in effect a new contract and must contain all the essential elements of a valid contract. *Knight v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 20, 22–23, 374 S.E.2d 520, 522 (Ct.App.1988). This is true even though the parties' renewal contract continues to enforce the terms of the expiring contract and no new policy of insurance is issued. *Id.* The exception to the general rule is when the renewal is consummated in pursuance of a provision in the expiring policy. *Id.* In such instance, the renewal is an extension of the old contract. *Id.*

The supreme court has held that when a nuisance is continuing and the injury is abatable, the statute of limitations does not run merely from the time of the original intrusion on the property and cannot be a complete bar. *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 287, 543 S.E.2d 563, 567 (Ct.App.2001). Rather, a new statute of limitations begins to run after each separate invasion of the property. *Id.; see Cutchin v. S.C. Dep't of Highways & Pub. Transp.*, 301 S.C. 35, 37, 389 S.E.2d 646, 648 (1990) (stating if the injury is permanent, the plaintiff has a single cause of action that cannot be split; however, if the cause of the injury is abatable, each injury gives rise to a new cause of action (citing *Webb v. Greenwood Cnty.*, 229 S.C. 267, 277, 92 S.E.2d 688, 692 (1956))).

The master properly determined the statute of limitations was not a complete bar on the USDA benefits. Similar to the supreme court and this court's rulings in other statute of limitations cases, because each application with the USDA was for a fixed duration, it required a separate renewal each year and the benefit was contingent upon an offer and acceptance by the USDA. Therefore, the master properly determined the statute of limitations was not an absolute bar on Emma's rights to collect on a portion of the USDA benefits.

This action was commenced in 2006. Under section 15–3–530, any claim between 2000 to 2002 would be barred by the

three-year statute of limitations. The remaining USDA applications for benefits from 2003 to 2007 were appropriately before the master. Accordingly, we affirm the master's finding the statute of limitations was not a complete bar.

## III. PARTITION

██ Emma argues the master erred in relying on section 15–61–25 of the South Carolina Code (2009) because this is a partition action brought under section 62–3–911 of the South Carolina Code (Supp.2012), which is contained in the probate code. Emma contends because the action originated in the probate court, the probate code continues to apply to the partition. She suggests the order of priority for abatement would be ignored by not applying the proper statute. We find the master should have applied the probate code's partition statute.

The master relied on section 15–61–25 in ordering partition of the property, which states:

> For the purposes of this section, "joint tenants and tenants in common" include heirs or devisees. Upon the filing of a petition for partition of real property owned by joint tenants or tenants in common, the court shall provide for the nonpetitioning joint tenants or tenants in common who are interested in purchasing the property to notify the court of that interest no later than ten days prior to the date set for the trial of the case. The nonpetitioning joint tenants or tenants in common shall be allowed to purchase the interests in the property as provided in this section whether default has been entered against them or not.

The probate code's partition statute, contained in section 62–3–911, states:

> When two or more heirs or devisees are entitled to distribution of undivided interests in any personal or real property of the estate, the [PR] or one or more of the heirs or devisees may petition the court prior to the closing of the estate, to make partition. After service of summons and petition and after notice to the interested heirs or devisees, the court shall partition the property in kind if it can be fairly and equitably partitioned in kind. If not subject to

fair and equitable partition in kind, the court shall direct the [PR] to sell the property and distribute the proceeds.

In *Waddell v. Kahdy,* 309 S.C. 1, 4, 419 S.E.2d 783, 785 (1992), the supreme court found the probate code governs an action when it is moved to circuit court, and remains primarily within the scope of the probate code. *Id.* The court under an assumption that the action was removed pursuant to section 62–1–302 of the South Carolina Code (1991) based its decision on the fact the action originated in the probate court. *Waddell,* 309 S.C. at 4, 419 S.E.2d at 785. Here, the case was removed to circuit court pursuant to section 62–1–302 for the purpose of partition.

While no case has addressed the application of the revised circuit court statute, we find *Waddell* controlling. Because the action remains primarily an action governed by the probate code, we find the probate code should have continued to be applied after the removal to the master. *Waddell,* 309 S.C. at 4, 419 S.E.2d at 785. Furthermore, because a partition statute is provided in the probate code, the master should have relied upon that statute in addressing the partition issue. *Capco of Summerville, Inc. v. J.H. Gayle Constr. Co.,* 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) ("Where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect."). Therefore, we reverse and remand this issue for the master to apply the probate code's statute.

## IV. *EXECUTOR DE SON TORT*

 Emma maintains the master erred in allowing Clyde to retain one-half of the value of the benefits to the estate pursuant to the *executor de son tort* statute. She argues this ruling allows Clyde to retain one-half of the gross value of the estate's receivables, which would require her to shoulder the entire burden of the administration of the estate. She argues the master erred in concluding Clyde would have received half of the USDA subsides. She maintains the estate was entitled to all of the payments and Clyde's share would be distributed after administration of the estate. We agree and find this ruling was premature.

The master's finding bypassed the distribution and order of abatement proscribed in the probate code; thus awarding one-half of the value of the property was an error of law. Section 62–3–902 of the South Carolina Code (2009) specifically states the order of abatement in which testamentary gifts are reduced to pay debts or other claims against the estate. By allowing Clyde to retain one-half of the value of the estate benefits, the master ignored the plain language of the abatement statute and completely disregarded the possibility that the assets of the estate were insufficient to pay all debts, claims, and devises. Without considering the estate as a whole from the purview of the probate court, there is no conceivable method by which the master could divide the subsidy award in half. Therefore, we reverse and remand the master's finding that Clyde was entitled to one-half of the USDA benefits prior to the estate's distribution pursuant to section 62–3–902.

## V. TITLE OF PROPERTY

Emma maintains the trial court erred in concluding that judgments of an heir-at-law affect the ability of a PR of an open estate to convey good title to real estate. Based on our determination that this case be reversed to address the partition statute and the division of estate property, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Based on all of the foregoing, the order of the master is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT and LOCKEMY, JJ., concur.